UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RONALD A. WIMBERLY,
CDCR # BV-1136,

                                    Plaintiff,

            vs.

J. BONILLA, et al.,

                                    Defendants.

Case No.:  25-cv-03293-AJB-JLB

**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**

Plaintiff Ronald A. Wimberly is a state inmate proceeding *pro se* and *in forma pauperis* ("IFP") with this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) On March 9, 2026, the Court dismissed Plaintiff's complaint with leave to amend for failure to state a claim. (Doc. No. 5.) Plaintiff has now filed a First Amended Complaint ("FAC"). (Doc. No. 8.)

**I.      Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

    **A.      Standard of Review**

Because Plaintiff is a prisoner and is proceeding IFP, his FAC requires a pre-Answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails

to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (citing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (citing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quote marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**B.    Allegations in the FAC**

Plaintiff alleges that on November 13, 2024, while housed at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, Defendant Correctional Officer Bonilla attempted to sell him a rotten honey bun. (Doc. No. 8 at 3.) When Plaintiff noticed mold and green fungus on the bun, he told Bonilla he should not be selling food in that

25cv3293-AJB (JLB)

condition, and Bonilla responded that he did not care. (*Id*.) When Plaintiff told Bonilla he was going to file a staff complaint that Bonilla was trying to make Plaintiff sick, Bonilla replied "if you write me up I'll write you up for battery on staff." (*Id*.) Defendant Correctional Officer Pelayo then activated his personal alarm for no reason, placed Plaintiff on the ground in handcuffs, and took him to a holding cage where he stayed for about four hours without the use of a bathroom or drinking water. (*Id*.) Bonilla "followed through with his threat" and filed a disciplinary charge for battery on a non-inmate in which Bonilla and Pelayo both stated that Plaintiff threw the bun at Bonilla. (*Id*. at 3–4.)

Plaintiff alleges that while he was in restricted housing he was denied "all his personal, legal and canteen property" to prevent him from filing grievances against Bonilla and Pelayo for conspiring to violate his rights under the First and Eighth Amendments. (*Id*. at 4–5.) Defendant Correctional Captain Nastasi entered into a conspiracy with those two Defendants by asking Plaintiff if his mental health was the cause of his assaulting staff. (*Id*. at 6.) Plaintiff denied assaulting anyone, but Nastasi "wanted the senior hearing officer to find Mr. Wimberly guilty of the offense, and the defendants as a whole wanted to definitely inhibit Mr. Wimberly's speech." (*Id*.)

Defendant Correctional Lieutenant Alexander told Plaintiff that "he did not like inmates who complained about everything and he was going to keep Mr. Wimberly in restricted housing and make his life very difficult." (*Id*.) Alexander "refused to provide an investigative employee to obtain video" showing Plaintiff did not assault Bonilla, and told Plaintiff that he saw the video and knew he did not assault Bonilla. (*Id*.) He told Plaintiff: "'Your problem is you cry too much' referring to filing complaints against staff members." (*Id*.) Defendant Jones, who is otherwise unidentified, told Plaintiff that even though Plaintiff had not assaulted Bonilla, Alexander told him to find Plaintiff "guilty of something and he did." (*Id*.)

Plaintiff alleges that Defendant Chief Executive Officer Reyes "created a policy that will stop inmates from filing grievances and instructed staff to find creative ways to place inmates in restricted housing to prevent those inmates from filing grievances" and "has

25cv3293-AJB (JLB)

acquiesced to these defendants' actions who done so without impunity." (*Id*.) Plaintiff alleges Reyes failed to train his employees, is responsible for the custody, treatment, training and discipline of all inmates, and allows employees to intentionally fail to report misconduct. (*Id*. at 7.) Plaintiff claims that all Defendants engaged in a concerted and coordinated effort to impede and prohibit him from filing complaints which resulted in his loss of good time credits, canteen and phone privileges, yard time, and the ability to prepare for a successful release and rehabilitation. (*Id*.)

### C.   Discussion

#### 1.   Due Process

As Plaintiff was instructed in the Court's prior dismissal order, he is entitled to due process procedural protections when charged with a disciplinary violation "when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (Doc. No. 5 at 5 (quoting *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) and *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken." *Serrano*, 345 F.3d at 1077–78. A prisoner must show he was deprived of a liberty interest and that the procedures were not constitutionally sufficient. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989).

Plaintiff's allegation that he was falsely charged does not state a claim because a prisoner does not have a constitutionally guaranteed right to be free of a disciplinary charge based on false allegations. *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)) (allegation of false evidence planted by prison guard does not state a constitutional claim where due process protections are provided); *Murschel v. Paramo*, 2018 WL 539159, at *5 (S.D. Cal. 2018) (allegations that an RVR included false information does not state a claim under section 1983.) As long as a prisoner is afforded procedural due process in a hearing on the charge, allegations of false

25cv3293-AJB (JLB)

or fabricated charges in a disciplinary proceeding fail to state a claim under § 1983. *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984).

Plaintiff also alleges he was deprived of due process in connection to his placement in the restricted housing unit. In determining whether an atypical and significant hardship occurred, courts look to the conditions of confinement in the restricted housing unit, the duration of the stay there, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088–89 (9th Cir. 1996). The four-hour stay in the restricted housing unit where he was briefly deprived of drinking water, a bathroom and his property does not implicate a protected liberty interest. *See Sandin*, 515 U.S. at 484 (no liberty interest implicated by disciplinary segregation for thirty days). Plaintiff was informed in the prior dismissal order that although his allegation of lost custody credits could implicate a protected liberty interest if the loss affected the duration of his sentence, there were no allegations the credits were not restored or that he is serving the type of sentence which can be shortened by custody credits. (Doc. No. 5 at 6.) Plaintiff was also informed that even if he could cure that pleading defect he failed to allege he was denied any procedural protection in relation to the disciplinary hearing, as his original complaint indicated he attended and testified at the hearing, presented questions to Bonilla, and was given a written statement of reasons for the guilty finding of creating a disruption for attempting to open the canteen door. (*Id.*) He now claims in the FAC that he was deprived of an investigating employee to obtain a video which would have showed he did not assault Bonilla. (Doc. No. 8 at 6.) However, Plaintiff was found guilty of creating a disruption, not assault, and he does not allege the video was relevant to that charge.

The pleading deficiencies of a Fourteenth Amendment due process claim identified in the prior dismissal order are not cured in the FAC, and this claim is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

### 2. Eighth Amendment

Plaintiff claims the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by housing him in the restricted housing unit where he stayed

25cv3293-AJB (JLB)

for about four hours without drinking water or the use of a bathroom, and was denied "all his personal, legal and canteen property." (Doc. No. 8 at 3–5.) He also alleges Defendant Alexander threatened to "make his life very difficult" while there, and that Defendant Nastasi asked if his mental health was the cause of him assaulting staff. (*Id*. at 6.)

"[A] prison official violates the Eighth Amendment only when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" and requires that "a prison official must have a 'sufficiently culpable state of mind,'" that is, "one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson*, 501 U.S. at 297, 302–03). The official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff once again fails to plausibly allege any Defendant was aware of facts from which an inference could be drawn, or drew an inference, that the conditions in the restricted housing unit posed an excessive risk to his health or safety and disregarded that risk. *Id*.; *Anderson v. County of Kern*, 45 F.3d 1310, 1315 (9th Cir. 1995) (no constitutional violation for placement in safety cage with short-term deprivations of basic needs such as food, clothing, shelter and sanitation). The alleged comments by the Defendants do not by themselves state a claim. *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.").

Plaintiff's Eighth Amendment claim is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

### 3.    First Amendment

Plaintiff claims the Defendants violated his First Amendment rights when they charged him with battery, placed him in the restricted housing unit, and found him guilty

of a disciplinary infraction, all in retaliation for complaining that Bonilla was selling food which was not fit for consumption. (Doc. No. 8 at 3–7.) "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (2005) (footnote omitted). Plaintiff must also allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff has plausibly alleged an adverse action was taken against him. *See Hines v. Gomez*, 108 F.3d 265, 268–69 (9th Cir. 1997) (false disciplinary charge may constitute adverse action). He must, however, set forth factual allegations which plausibly allege a Defendant acted with a retaliatory motive. *Rhodes*, 408 F.3d at 567 (stating a plaintiff must allege adverse action was "because of" his protected conduct). Retaliation cannot be established simply by showing adverse action took place after protected speech; Plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Timing may be considered circumstantial evidence of retaliatory intent, but "timing alone is insufficient" to support an inference that prison officials took an adverse action against a prisoner in retaliation because of a prisoner's participation in protected conduct. *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

The FAC alleges that when Plaintiff told Bonilla he was going to file a staff complaint that Bonilla was trying to make Plaintiff sick by selling him a rotten bun, Bonilla said "if you write me up I'll write you up for battery on staff." (Doc. No. 8 at 3.) Plaintiff alleges Bonilla "followed through on his threat" and filed a disciplinary charge. (*Id.*) Despite Bonilla's threat, there are no factual allegations plausibly indicating that the disciplinary charge was filed for any reason other than the actions taken by Plaintiff. As noted in the prior dismissal order, Plaintiff admitted at the disciplinary hearing that he attempted to open the canteen door and that he was found guilty of creating a disturbance

25cv3293-AJB (JLB)

for attempting to open the canteen door. (*See* Doc. No. 5 at 6.) If he claims that Bonilla filed the charge or that Pelayo activated his alarm and took him to the ground in retaliation for complaining about or threatening to file a grievance regarding the rotten bun, rather than for creating a disturbance by attempting to open the canteen door, he must show a nexus other than timing between his speech and the issuance of the disciplinary charge, as speculation of retaliatory motive is insufficient to give rise to a claim for relief. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) ("[M]ere speculation that defendants acted out of retaliation not sufficient [to state a claim]."). Even if Plaintiff could overcome that pleading deficiency, he has failed to allege the Defendants' actions did not serve any legitimate penological goal, such as preserving institutional order and discipline. Rather, he admitted at the disciplinary hearing that he attempted to open the canteen door and that he was found guilty of creating a disruption for attempting to open the door.

Plaintiff's First Amendment retaliation claim is dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

### 4. Supervisor Liability

Finally, Plaintiff alleges Defendant Reyes "created a policy that will stop inmates from filing grievances and instructed staff to find creative ways to place inmates in restricted housing to prevent those inmates from filing grievances" and "has acquiesced to these defendants' actions who done so without impunity." (Doc. No. 8 at 6.) He also alleges Reyes failed to train his employees, is responsible for the custody, treatment, training and discipline of all inmates, and allows employees to intentionally fail to report misconduct. (*Id*. at 7.)

"A supervisory official is liable under § 1983 so long as there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (internal quotation marks omitted). A supervisor may "be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his

8

acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018). Because the FAC does not plausibly allege a constitutional violation, it necessarily fails to state a claim against Reyes for his alleged involvement. *Id*. To the extent Plaintiff intended to bring a conspiracy claim based on his allegation that the Defendants engaged in a concerted and coordinated effort to impede and prohibit him from filing complaints (Doc. No. 8 at 7), he has failed to state a claim because there are no factual allegations that any Defendant reached an agreement to deprive him of his rights. *See American Tobacco Co. v. United States*, 328 U.S. 781, 809–10 (1946) (conspiracy requires a showing that the parties have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement."); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy without factual specificity is insufficient [to state a claim].").

### D.    Leave to Amend

In light of Plaintiff's pro se status, the Court grants one final opportunity to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### III.    CONCLUSION AND ORDER

Accordingly, the Court:

1.    **DISMISSES** Plaintiff's First Amended Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

2.    **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a Second Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v.*

9

*Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  July 6, 2026

Hon. Anthony J. Battaglia
United States District Judge